AO 91 (Rev. 11/11)  Criminal Complaint

**FILED**

MAY 2 2 2023

PETER A. MOORE, JR., CLERK
US DISTRICT COURT, EDNC
BY _____ DEP CLK

# UNITED STATES DISTRICT COURT
## for the
### Eastern District of North Carolina

| | | |
|---|---|---|
| United States of America | ) | |
| v. | ) | Case No. 5:23-mJ-1596-JG |
| | ) | |
| | ) | |
| Malik JONES | ) | |
| | ) | |
| *Defendant(s)* | | |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ___April 11, 2023___ in the county of ___Wake___ in the ___Eastern___ District of ___North Carolina___, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| Title 21 U.S.C. § 846 | Conspiracy to Distribute and Possess with Intent to Distribute Cocaine |

This criminal complaint is based on these facts:

See attached.

☑ Continued on the attached sheet.

On this 22 day of MAY 2023,
STEPHEN BABITS appeared
before me via reliable electronic
means, was placed under oath
and attested to the contents of
this affidavit, via telephone.

~~Date:~~

City and state: 
Raleigh, NC

**Stephen Babits** Digitally signed by Stephen Babits
Date: 2023.05.18 20:18:50 -04'00'

*Complainant's signature*

Stephen Babits, Special Agent
*Printed name and title*

*Judge's signature*

U.S. Magistrate Judge James E. Gates
*Printed name and title*



## AFFIDAVIT

1. I, Stephen Babits, (hereinafter referred to as "your affiant", am a Special Agent with the United States Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF"). I have been a Special Agent with ATF since August 2001, having received extensive training at the ATF National Academy in the investigation of firearms, arson, narcotics and explosives offenses. I have participated in investigations involving all of these areas. I have conducted numerous complex case investigations that have included federal firearm and narcotic violations. I am a certified Federal Law Enforcement Instructor at the ATF National Academy where I teach Case Management, Complex Case Investigations and Interviewing. I have attended several advanced training conferences to include the U.S Department of Justice's Asset Forfeiture and Money Laundering Seminar and the Organized Crime Drug Enforcement Task Force Conferences. Previously, I was employed by the United States Department of Justice for 3-1/2 years as a Deputy United States Marshal. I have conducted several fugitive investigations, operated in witness protection assignments, and provided dignitary protection for Judicial Officials. Prior to my tenure with the Department of Justice, I was employed as a product safety investigator with the United States Consumer Product Safety Commission. I am a graduate



of Northeastern University, as of 1996, with a Bachelor of Science Degree in Criminal Justice.

2. This affidavit is based my personal knowledge and information supplied by other law enforcement officers, surveillance, and reviewing law enforcement reports. This affidavit does not set forth all information known to your affiant about this case and is being submitted for the purpose of providing sufficient information to establish probable cause for an arrest warrant for Malik JONES ("JONES"), Phillip GRASSI ("GRASSI") and Malik CRAWFORD-BEY ("CRAWFORD").

3. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of Title 21, United States Code, Section 846 (Conspiracy to Distribute and Possess with Intent to Distribute Cocaine) and are being committed by CRAWFORD, GRASSI and JONES.

4. The United States, including the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") and the Raleigh Police Department ("RPD"), is conducting criminal investigations into subjects involved in the distribution of firearms, kilogram quantities of fentanyl, cocaine, and cocaine base "crack" in the Eastern District of North Carolina and throughout the United States by CRAWFORD and other unknown source(s) of supply ("SOS"). Through the course of this investigation, it has been determined that CRAWFORD is the leader of the violent drug trafficking organization ("VDTO") linked to the



United Blood Nation Nine Trey Gansgters ("NTG"), a wholly illegitimate criminal enterprise. CRAWFORD is a source of supply for the VDTO and his exact role within the organization is to supply fentanyl, heroin, cocaine, cocaine base "crack," and marijuana to drug dealers in the Raleigh, North Carolina area. CRAWFORD controls a kilogram level VDTO and conspires with various subjects to distribute narcotics within the supply chain. Agents and law enforcement officers investigating the instant drug trafficking conspiracy have prior knowledge of previous investigations into known members and associates of NTG's directly or indirectly tied to CRAWFORD that have resulted in the seizure of fentanyl, cocaine, cocaine base "crack", heroin, marijuana, firearms, and United States currency.

5. On March 28, 2023, the Honorable Richard E. Myers II, Chief United States District Judge for the Eastern District of North Carolina, authorized the continued interception of wire and electronic communication of TARGET TELEPHONE ONE/TT1 belonging to Brian Autry, and the initial interception of wire and electronic communication of CRAWFORD's cellular telephone device identified as "424-599-3136" (hereinafter referred to as TARGET TELEPHONE #2 or TT2). Interception of TT2 began on March 29, 2023 and is active through May 25, 2023.

6. During the initial interception of TT2, several co-conspirators of CRAWFORD and the VDTO have been identified. Two (2) of these co-conspirators have been identified as GRASSI and JONES. Both subjects are in frequent contact with



CRAWFORD over TT2. JONES has been identified as customer of CRAWFORD's and is being supplied with multiple controlled substances.

7. On April 10, 2023, at approximately 4:28 pm, pursuant to the court-authorized interception of wire and electronic communications over TT2, a wire communication between JONES (919-576-4745) and CRAWFORD, utilizing TT2 was intercepted. This wire communication was an outgoing call from JONES to CRAWFORD. The following is a summary of the intercepted wire communication between JONES and CRAWFORD:

**[BEGINNING OF CALL]**

CRAWFORD:   [ASIDE: [MUMBLES] [U/I.] Hello?

JONES:   Yo.

CRAWFORD:   Hello.

JONES:   What up?

CRAWFORD:   Nothin', what's up with you?

JONES:   Shit. [MUMBLES] Call it.

CRAWFORD:   [AUDIO GLITCHES] [U/I].

JONES:   What's up with it?

CRAWFORD:   Made any progress?

[VOICES IN THE BACKGROUND]

JONES:   You said if I made any progress?

CRAWFORD:   Yeah.

JONES:   No, not yet, I ain't gonna lie, I been goddamn sick as hell since I uh, the last time I seen you.



| | |
|---|---|
| CRAWFORD: | The same thing my man told me. He told me he was sick, too. A'ight— |

[VOICES OVERLAP]

| | |
|---|---|
| JONES: | I think mine is uh, weather change' or something. |
| CRAWFORD: | And I had something nice for you, too, but a'ight. Just let me know when you feel— |

[VOICES OVERLAP]

| | |
|---|---|
| JONES: | I mean as my fucken, as soon as [U/I], hit you. |
| CRAWFORD: | Yeah, I got something nice for you, too. |
| JONES: | A'right, bet, say less. |
| CRAWFORD: | A'right. |
| JONES: | A'right. |

**[END OF CALL]**

8. Based on the intercepted telephone call between CRAWFORD and JONES, and based on your affiant's training, experience, and knowledge of the investigation, CRAWFORD asks if JONES has made any "progress." JONES indicates that he has been sick. CRAWFORD then indicates that he "has something nice" for JONES. Investigators believe this is coded language indicating that CRAWFORD wants to know if he has sold or made progress on his current stash of controlled substances. CRAWFORD then indicates that he has more product for JONES.



9. On April 11, 2023, at approximately 12:18 pm, pursuant to the court-authorized interception of wire and electronic communications over TT2, an electronic communication between JONES utilizing 919-576-4745 and CRAWFORD over TT2 was intercepted. This electronic communication was an outgoing text message to CRAWFORD from JONES. The following is a summary of the intercepted electronic communication between JONES and CRAWFORD:

    a. JONES: "Call me"

10. On April 11, 2023 at approximately 1:02 pm, pursuant to the court-authorized interception of wire and electronic communications over TT2, a wire communication between JONES utilizing 919-576-4745 and CRAWFORD over TT2 was intercepted. This wire communication was an outgoing call from CRAWFORD to JONES. The following is a summary of the intercepted wire communication between JONES and CRAWFORD:

**[BEGINNING OF CALL]**

| | |
|---|---|
| JONES: | Yo? |
| CRAWFORD: | Malik, wassup? |
| JONES: | Wassup, man? You talkin' about me being asleep, goddamn, nigga, shit! |
| CRAWFORD: | I ain't 'sleep, I been up. |
| JONES: | You been up? |
| CRAWFORD: | For hours. |
| JONES: | Oh, man, that's wassup, I been calling you, son. |



| CRAWFORD: | Yeah. What's going on? |
|---|---|
| | [VOICES OVERLAP] |
| JONES: | Where you at? You around? [GRUNTS] |
| CRAWFORD: | I'm on Hillsborough Street. I'm 'bout to go to the juice bar, why, wassup? |
| JONES: | Shit, I got something for you, man. |
| CRAWFORD: | A'right, that's cool, I'ma um… [MUMBLES] I dunno, um… give me about thirty minutes. I'ma call you; I'll tell you where we can link up at. |
| JONES: | A'right. |
| CRAWFORD: | Remember the last place we was at? [U/I]— |
| | [VOICES OVERLAP] |
| JONES: | Yeah. |
| CRAWFORD: | When I call you, just meet me over there by that gas station. |
| JONES: | A'right. |
| CRAWFORD: | A'right, boy. |

**[END OF CALL]**

11. Based on the intercepted telephone call between CRAWFORD and JONES, and based on my training, experience, and knowledge of the investigation, JONES asked if CRAWFORD was around. CRAWFORD indicated that he was in the Hillsborough Street area. JONES indicated that he had something for CRAWFORD. Investigators believe that JONES is advising CRAWFORD that he has money for him. CRAWFORD tells JONES to give him thirty (30)



minutes and he will contact JONES with a meet location. CRAWFORD tells JONES that when he calls him, he wants him to meet him by the gas station from the last time the two subjects met.

12. On April 11, 2023, at approximately 4:53 pm, pursuant to the court-authorized interception of wire and electronic communications over TT2, a wire communication between JONES (919-576-4745) and CRAWFORD over TT2 was intercepted. This wire communication was an outgoing call from CRAWFORD to JONES. The following is a summary of the intercepted wire communication between JONES and CRAWFORD:

### [BEGINNING OF CALL]

| | |
|---|---|
| JONES: | Bro? |
| CRAWFORD: | Yo? |
| JONES: | Uh, I'm [AUDIO GLITCHES] heading into the city um, [U/I] right quick. |
| CRAWFORD: | You—you where? |
| JONES: | Mini City. |
| CRAWFORD: | Oh, you right up the street from me. |
| JONES: | A'ight, bet. Um, so what you wanna do? |
| CRAWFORD: | Meet me over there, meet me over there by that Sheetz, in the apartments over there. |
| JONES: | A'ight, I got Ali with me. |
| CRAWFORD: | I don't give a fuck. |
| JONES: | Oh, a'ight. [CHUCKLES] |



| CRAWFORD: | I knew Ali before I knew other niggas— |
|---|---|
| | [VOICES OVERLAP] |
| JONES: | Nah, I knew—I know, man, I'm just sayin', cause I know what you told me the other day we was over there. Like, you said you weren't [U/I] bring nobody over there, so I was just, you know what I mean? |
| CRAWFORD: | Yeah, no, boy, Ali' cool. |
| JONES: | A'ight, yeah, nah, he… |
| CRAWFORD: | Ali ain't gonna tell nothin'— |
| | [VOICES OVERLAP] |
| JONES: | Nah, yeah, no, I already know. |
| CRAWFORD: | Yeah. |
| JONES: | A'right. |

**[END OF CALL]**

13. Based on the intercepted telephone call between CRAWFORD and JONES, and based on my training, experience, and knowledge of the investigation, JONES indicated to CRAWFORD that he was in the "Mini City" area of Raleigh. CRAWFORD tells JONES to meet him at the apartment by the "Sheetz," which is a gas station next to what investigators knew as a "stash house" for CRAWFORD. The "stash house" is located at 6221 Litchford Forest Lane, Apartment 206, Raleigh, North Carolina, which is across the street from the "Sheetz" gas station.



14. On April 11, 2023, at approximately 4:58 pm, pursuant to the court-authorized interception of wire and electronic communications over TT2, a wire communication between GRASSI (424-335-3599) and CRAWFORD over TT2 was intercepted. This wire communication was an outgoing call from CRAWFORD to GRASSI. The following is a summary of the intercepted wire communication between GRASSI and CRAWFORD:

**[BEGINNING OF CALL]**

[TELEPHONE RINGS]

CRAWFORD: Yo?

GRASSI: Yo?

CRAWFORD: Where you at? [Echo: Where you at?]

GRASSI: Uh, in the old apartments, waiting on you to pull up here.

CRAWFORD: In the old apartments?

GRASSI: Yeah.

CRAWFORD: [U/I]—

[VOICES OVERLAP]

GRASSI: Sitting right beside the truck.

CRAWFORD: Huh?

GRASSI: I said sitting beside the truck. I was waiting for you to get here.

CRAWFORD: [U/I]—nah, I'ma—co—meet me at Liz' house.

GRASSI: A'right.

**[END OF CALL]**



15. Based on the intercepted telephone call between CRAWFORD and JONES, and based on my training, experience, and knowledge of the investigation, CRAWFORD asks GRASSI where GRASSI's location is. GRASSI indicated that he was waiting for CRAWFORD at the "old apartment." CRAWFORD then told GRASSI to come to the apartment on Litchford Road, which is the "stash house."

16. Surveillance was established in the area of 6221 Litchford Forest Lane, Apartment 206. Surveillance units observed the following:

   a. CRAWFORD arrived at 6221 Litchford Forest Lane at approximately 5:01 pm in a Ford Transit Van, which was confirmed by a court authorized GPS unit

   b. GRASSI arrived at 6221 Litchford Forest Lane location at approximately 5:05 pm.

   c. JONES arrives at 6221 Litchford Forest Lane in a black Jeep Cherokee with Florida registration QZUN15 at approximately 5:13 pm.

17. On April 11, 2023 at approximately 5:12 pm, pursuant to the court-authorized interception of wire and electronic communications over TT2, a wire communication between GRASSI (424-335-3599) and CRAWFORD over TT2 was intercepted. This wire communication was an outgoing call from CRAWFORD to GRASSI. The following is a summary of the intercepted wire communication between GRASSI and CRAWFORD:

**[BEGINNING OF CALL]**

| | |
|---|---|
| GRASSI: | You wanna go upstairs? |
| CRAWFORD: | Yeah, tell Malik to come up, too. |
| GRASSI: | Huh? |
| CRAWFORD: | [AUDIO GLITCHES] Tell Malik to come up, too. |
| GRASSI: | A'right. |
| CRAWFORD: | Yeah. |

**[END OF CALL]**

18. Based up on your affiant's knowledge of the case, training and experience, during this call, CRAWFORD asks GRASSI to come upstairs to the "stash house" and to tell "Malik" to come up also. This location ise where CRAWFORD and GRASSI store narcotics and conduct drug transactions. Surveillance units then observed the following:

    a. JONES leaves 6221 Litchford Forest Lane at approximately 5:49 pm and is surveilled to the Sheetz located at 2408 Dixie Forest Rd, Raleigh, North Carolina

    b. CRAWFORD and GRASSI then walk from 6221 Litchford Forest Lane and proceed to separate vehicles in the parking lot at approximately 5:50 pm. Both subjects then leave the area and law enforcement observes GRASSI driving a Nissan Altima and CRAWFORD driving a Ford Transit Van.

19. Surveillance was maintained on JONES and his vehicle. At approximately 6:01 pm, JONES was observed meeting with an unknown person briefly at the



driver's side of his vehicle. JONES then left the Sheetz and proceeded northbound on Atlantic Avenue. JONES then proceeded onto Litchford Road. JONES proceeded into the Park at North Ridge Apartments and turned around. JONES was then observed driving southbound on Litchford Road. JONES was observed failing to maintain his lane by ATF Task Force Officer Chris Martucci.

20. ATF TFO Chris Martucci requested the assistance of the uniformed RPD personnel to conduct a traffic stop based on JONES's motor vehicle violation. The traffic stop was conducted by Officer White and additional uniformed RPD personnel. The vehicle was occupied by two (2) subjects, JONES, the driver, and a front seat passenger, Jamal ROOKS ("ROOKS"). A warrantless probable cause search of the vehicle based on the odor and observation of marijuana inside the vehicle resulted in the seizure of the following items:

    a. Approximately forty-nine (49) grams of cocaine

    b. Approximately fifty-eight (58) grams of marijuana

    c. Nine hundred and eleven dollars ($911.00 USD)

    d. Digital scale

    e. Nine (9) grams of marijuana

    f. Ten (10) grams of marijuana

21. JONES and ROOKS were transported to the RPD Detective Division. ROOKS provided a brief unprotected statement to ATF TFO Martucci and Conley. ROOKS was subsequently released without charges. JONES declined to speak



with investigators. JONES was subsequently charged with multiple drug related felony charges in Wake County, North Carolina. All seized items were placed into evidence at the RPD Detective Division.

22. The cocaine was sent to the City-County Bureau of Identification ("CCBI") and the analysis confirmed that the drugs seized from JONES was 45.65 grams of cocaine hydrochloride.

23. On April 12, 2023 at approximately 12:06 am, pursuant to the court-authorized interception of wire and electronic communications over TT2, a wire communication between GRASSI (424-335-3599) and CRAWFORD over TT2 was intercepted. This wire communication was an incoming call to CRAWFORD from GRASSI. The following is a summary of the intercepted wire communication between GRASSI and CRAWFORD:

### [BEGINNING OF CALL]

CRAWFORD:      Hello?

GRASSI:        Yo, they got 'em, son.

CRAWFORD:      For what?

GRASSI:        Trafficking… [BACKGROUND: Possession.]

GRASSI:        Possession with intent to sell. [BACKGROUND: Failure to appear.] Failure to appear. [BACKGROUND: [U/I].]

CRAWFORD:      How much shit they had on?

GRASSI:        [BACKGROUND: [U/I].] Huh? [BACKGROUND: [U/I].]

CRAWFORD:      How much shit they had on 'em?



| | |
|---|---|
| GRASSI: | Shit, everything, bro! [BACKGROUND: [U/I].] |
| CRAWFORD: | What's everything— |

[VOICES OVERLAP]

| | |
|---|---|
| GRASSI: | I mean, they had just left from there. |
| CRAWFORD: | [U/I]— |

[VOICES OVERLAP]

| | |
|---|---|
| GRASSI: | Just left from seeing us. |
| CRAWFORD: | The fuck are you talkin' about on the phone, man? That's crazy, man. |
| GRASSI: | And bond two-hundred and... one thousand. |
| CRAWFORD: | Huh? |
| GRASSI: | Bond two-hundred and one thousand. |

[BEEPING NOISE IN THE BACKGROUND]

| | |
|---|---|
| CRAWFORD: | I'm talkin' 'bout how much shit they get get caught with? |
| GRASSI: | They had everything, bro! [PAUSE] [ASIDE: [MUMBLES] Yeah. |
| CRAWFORD: | That shit's, that shit's— |

[VOICES OVERLAP]

| | |
|---|---|
| GRASSI: | Felony possession, controlled substance... uh, possession—yup, possession with intent to sell, cocaine— trafficking cocaine... [BACKGROUND: [U/I].] Possession— |

[VOICES OVERLAP]

| | |
|---|---|
| CRAWFORD: | Where'd they get arrested? |
| GRASSI: | Marijuana, possession of drug paraphernalia, eighty-two |



pills, driving while license impaired revoked. [BACKGROUND: [U/I].] Two-hundred and one thousand.

CRAWFORD: Damn, son! That shit crazy—

[VOICES OVERLAP]

GRASSI: I know that—I, I—Ali not in there, because I don't think Ali had nothing with him.

[BEEPING FROM A CAR DOOR BEING OPEN IN THE BACKGROUND]

CRAWFORD: Ali not there, but Malik is?

GRASSI: Yeah.

CRAWFORD: A'right, man. That shit crazy.

GRASSI: I knew it was something, bro, when these niggas ain't answering the fucken phone, my nigga! They was on the way to come and see me! They was on the way to pull up!

CRAWFORD: [WHISTLES] That is crazy.

GRASSI: My—and my mind went straight to you. I went—I, I, I knew what, I knew what it was.

CRAWFORD: Yeah.

GRASSI: [SIGHS]

CRAWFORD: That's, that's crazy, man. A'right.

GRASSI: A'right, bro. We already know, we gotta goddamn...

**[END OF CALL]**

24. Based up on your affiant's knowledge of the case, training and experience, during this call, GRASSI is notifying CRAWFORD that JONES was arrested on drug charges after JONES left CRAWFORD and GRASSI. When



CRAWFORD asks GRASSI, "How much shit they had on?", CRAWFORD is asking GRASSI how much drugs did JONES have on him during his arrest. When GRASSI responds, "Shit, everything bro!" and that JONES had "Just left from seeing us." When CRAWFORD responds, "The fuck are you talking about on the phone, man?", CRAWFORD is warning GRASSI not to speak about drug activity on the phone.

25. Based on the facts and details listed above, your affiant submits that there is probable cause to believe that on April 11, 2023, Malik CRAWFORD-BEY, Phillip GRASSI and Malik JONES did commit Conspiracy to Distribute and Possess with Intent to Distribute Cocaine in violation of Title 21, United States Code, Section 846.

**Stephen Babits** Digitally signed by Stephen Babits
Date: 2023.05.18 21:09:49 -04'00'

Stephen Babits
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives


On this  22 day of  MAY  20 23 ,  Stephen Babits  appeared before me via reliable electronic means, was placed under oath, and attested to the contents of this Affidavit, via telephone.


James E. Gates
United States Magistrate Judge
Eastern District of North Carolina

